IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MICHAEL F. DUGE, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 6:16-CV-114-RP |
| | § | |
| SEARS, ROEBUCK AND COMPANY | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Defendant's Motion to Dismiss and to Compel Arbitration (Dkt. 7), and Plaintiff's Response (Dkt. 8). The case was referred to United States Magistrate Judge Jeffrey C. Manske for a Report and Recommendation on the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended. Magistrate Judge Manske filed his Report and Recommendation on August 9, 2016 (Dkt. 10), recommending the Court deny Defendant's Motion to Dismiss and to Compel Arbitration without prejudice pending the resolution of remaining fact issues regarding the existence of an arbitration agreement between the parties.

On August 23, 2016, Defendant filed its Objection to the Report and Recommendation of the United States Magistrate Judge (Dkt. 11), objecting to the recommendation that the motion to dismiss and compel arbitration be denied. In light of these objections, the Court has undertaken a de novo review of the entire case file in this action and finds that Magistrate Judge Manske's Report and Recommendation is correct and should be approved and accepted.

1

## I. BACKGROUND

Plaintiff Michael F. Duge ("Plaintiff") was an employee of Defendant Sears, Roebuck and Co. ("Defendant" or "Sears") from March 1989 until Sears terminated his employment in 2013.[1] (Compl. ¶ 7, Dkt. 1; Mot. to Dismiss at 1, Dkt. 7.) At the time his employment ended, Plaintiff's immediate supervisor informed Plaintiff that he was being terminated because his position was being eliminated. (Compl. ¶ 8, Dkt. 1.) Plaintiff believed, however, that he was being terminated because of his age, and on January 21, 2014, Plaintiff filed a charge of discrimination against Sears with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) Then, on November 15, 2014, Plaintiff filed a lawsuit against Sears alleging his termination was due to age discrimination. (*Id.*; Mot. to Dismiss at 3, Dkt. 7.) The suit was dismissed pursuant to Defendant's unopposed motion to compel arbitration on February 3, 2015. (Def.'s Objs. at 2–3, Dkt. 11.)

On January 9, 2015, while the lawsuit was still pending, Plaintiff saw what he alleges appeared to be his old job posted on the Sears website, under the title "Merchandising and Pricing Lead." (Compl. ¶ 9, Dkt. 1.) Plaintiff alleges that he applied for the job and later called Sears regarding the status of his application. (*Id.*) He was transferred to his old supervisor—the same one who informed him that his job was being eliminated—who told Plaintiff that he could not discuss the matter with Plaintiff. (*Id.*) Plaintiff alleges that after his phone call to Sears, the job posting was removed from the company's website. (*Id.* ¶ 10.) Soon afterward, however, the job was re-posted under a new listing. (*Id.*) Later, Sears purportedly hired "a much younger and less qualified male applicant" for the Merchandising and Pricing Lead job. (*Id.* ¶ 12.) Plaintiff alleges that he also applied for three other open positions posted on the Sears website on January 29, 2015, but was not hired for any of these positions. (*Id.* ¶ 11.)

---

[1] As noted in the Report and Recommendation, Plaintiff alleges that he was terminated as of August 3, 2013, (Compl. ¶ 7, Dkt. 1), while Defendant asserts that Plaintiff was terminated on September 16, 2013, (Mot. to Dismiss at 1, Dkt. 7.)

2

Plaintiff now brings a second suit against Defendant based on its decision not to hire him for any of the positions to which he applied in January 2015. (*Id.* ¶ 14.) He argues that he was better qualified than the much younger applicants who were hired for the positions, but that Defendant did not hire him due to age discrimination and retaliation. (*Id.* ¶¶ 17–18.)

Defendant moved to dismiss this suit and compel arbitration, arguing that Plaintiff signed an agreement while he was an employee requiring that he arbitrate the claims he now brings against Sears. Defendant asserted that Plaintiff electronically accepted the agreement on April 11, 2012, and then later acknowledged the agreement's validity when he did not oppose Defendant's motion to compel arbitration in his first suit arising out of his termination. (Mot. to Dismiss at 3–4, Dkt. 7.)

Plaintiff responded that he never accepted the arbitration agreement, explaining that others at Sears had access to the Sears online portal using his log-in and could have accepted it on his behalf. (Pl.'s Resp. to Mot. to Dismiss at 3–6, Dkt. 8.) Plaintiff further contended that his current claims fall outside the scope of the arbitration agreement because the new claims arose almost eighteen months after the employment relationship that allegedly gave rise to the agreement ended. (*Id.* at 6–8.)

On August 9, 2016 the Magistrate Judge recommended that this Court deny Defendant's motion to dismiss and compel arbitration. (Report & Recommendation at 11, Dkt. 10). The Magistrate found that Plaintiff's claims do fall within the scope of the arbitration agreement, but that there is a factual dispute as to whether Plaintiff accepted the arbitration agreement. (*Id.*)

Defendant filed an objection to the Magistrate's recommendation to deny its motion on August 23, 2016. (Def.'s Objs., Dkt. 11.) Defendant reasserts its initial argument that Plaintiff signed an arbitration agreement and later acknowledged the validity of that agreement in his first suit against Defendant. Defendant emphasized that Plaintiff's lawyer even revised Defendant's unopposed motion to compel arbitration from Plaintiff's prior suit, including a sentence that stated,

3

in part: "Plaintiff acknowledges the application of the Agreement to the claims he has asserted in this litigation and agrees that this lawsuit should be dismissed." (Def.'s Objs. at 8; Dkt. 11.) Defendant also contends that Plaintiff's suggestion that someone else may have signed the arbitration agreement using his unique user ID and password is "pure speculation," does not fall "within the realm of possibility," and is thus insufficient to raise an issue of fact. (Def.'s Objs. at 4-7, Dkt. 11.)

Plaintiff responds to these objections with three arguments. First, Plaintiff argues that Defendant has failed to meet its burden to prove that that Plaintiff entered an arbitration agreement. (Pl.'s Resp. to Def.'s Objs. at 1–3, Dkt. 12.) Second, Plaintiff asserts that, even if Defendant met its burden, Plaintiff has sufficiently contradicted Defendant's evidence that Plaintiff entered in an arbitration agreement. (*Id.* at 4–6.) Third, Plaintiff contends that the claims in this case are within of the scope of the arbitration agreement Defendant's seek to enforce. (*Id.* at 6–9.)

Because Defendant timely filed an objection to the Magistrate's report and recommendation, the Court will review the portions of the Magistrate's report to which Defendant has objected de novo. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [magistrate judge's] report . . . to which objection is made."). The Court will also consider Plaintiff's argument that the Magistrate Judge erred in determining that the claims in this case fall outside of the arbitration agreement. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("[W]hile [§ 636(b)(1)] does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.").

## II. STANDARD OF REVIEW

"The Federal Arbitration Act ("FAA") provides that pre-dispute arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

4

the revocation of any contract.'" *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (quoting 9 U.S.C. § 2). The FAA's purpose is "to reverse the longstanding judicial hostility to arbitration agreement . . . and to place arbitration agreements on the same footing as other contracts." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000).The FAA permits an aggrieved party to file a motion to compel arbitration based on "the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. When considering a motion to compel arbitration, the Court must determine whether the parties agreed to arbitrate the dispute in question.[2] *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). This determination involves two considerations: (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the dispute at issue falls within the scope of that agreement. *Id.* If, however, "the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

While there is a strong federal policy favoring arbitration, this policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations omitted). Instead, courts apply ordinary state contract law principles to the question of whether the parties formed a valid agreement to arbitrate. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). The policy favoring arbitration does, however, apply to the determination of whether a particular dispute falls within the scope of an arbitration agreement. *Jones v. Halliburton Co.*, 583 F.3d 228, 242 (5th Cir. 2009).

Based on these standards, and the objection and response filed by the parties, the Court will now consider: (1) whether a dispute of fact exists regarding whether Plaintiff has accepted the

---

[2] Courts also consider whether a federal statute or policy renders claims addressed by an arbitration agreement to be nonarbitrable. *Primaerica Life. Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). Because Plaintiff has not suggested that any federal law would preclude the arbitration of his claims, and the Court has not identified any that do, the Court will not further consider the issue.

arbitration agreement relied on by Defendant, and (2) whether Plaintiff's claims fall within the scope of that agreement.

### III. DISCUSSION

Defendant asserts that Plaintiff accepted an arbitration policy and agreement (the "Arbitration Agreement") instituted by the company in April 2012. The Arbitration Agreement is seven pages long and provides that the agreement is between "The Company," which includes "Sears, Roebuck and Co., Kmart Corporation, Sears Holdings Management Corporation, Sears Holdings Corporation, and all subsidiaries, indirect subsidiaries, and affiliates of Sears Holdings Corporation," and "you," the "Associate." (Torrence Decl. Ex. A at 1.) In the introduction, the Arbitration Agreement explains:

> Under this Agreement, and subject to certain exceptions specified within the Agreement, all employment-related disputes between you ("Associate") and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below. . . .
>
> **Accordingly, Associate should read this Agreement carefully, as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration. Arbitration replaces the right of both parties to go to court, including the right to have a jury decide the parties' claims. Also, this Agreement prohibits Associate and Company from filing, opting into, becoming a class member in, or recovering through a class action, collective action, representative action or similar proceeding.**
>
> **If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement, Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

(*Id.* at 1 (emphasis in original).)

The next section of the Arbitration Agreement explains its scope:

> Except as it otherwise provides, **this Agreement applies, without limitation, to disputes regarding the employment relationship**, trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, **discrimination**, or harassment and claims arising under the Uniform Trade Secrets

6

>Act, Civil Rights Acts of 1964, Americans with Disabilities Act, **Age Discrimination in Employment Act, as amended**, Family and Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, **and any and all state statutes addressing the same or similar subject matters, and all other state or federal statutory and common law claims.**
>
>**This Agreement is intended to apply to and cover all such disputes that Associate has against Company that Associate could otherwise file in court** and all such disputes Company has against Associate that Company could otherwise file in court. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. The Arbitrator will not have the authority to determine whether this Agreement or any portion of it is enforceable, revocable or valid. **This Agreement will continue to apply after Associate is no longer employed by Company.**

(*Id.* at 1–2 (emphasis added).) The Arbitration Agreement goes on to address what is not covered by the agreement, such as workers compensation claims and any claims pending at the time the policy is instituted. (*Id.* at 2.) It includes additional detail regarding the required arbitration of claims brought through class action, collective action, or representative action, and also dictates how arbitration is to proceed. (*Id.* at 2–5.) Finally, the Arbitration Agreement explains the "Associate's Right To Opt Out," and the last page of the policy consists of an "Opt Out Form" that may be signed by the Associate and "returned within 30 days" in order for the Associate to opt out of the Arbitration Agreement. (*Id.* at 6–7.)

### A. Validity of Arbitration Agreement

Defendant argues that as an employee of Sears, Plaintiff accepted the Arbitration Agreement by submitting an online acknowledgement of the agreement on April 11, 2012. In addition, Defendant argues that Plaintiff later acknowledged this acceptance by consenting to submit previous claims to arbitration. The Court will address each of these arguments.

#### 1. Agreement to Arbitrate through Online Acknowledgement

Defendant submits the declaration of Trevor Torrence, an employee in the law department of Defendants' parent company, Sears Holdings Management Company, in support of its argument

7

that plaintiff accepted the terms of the Arbitration Agreement. (Torrence Decl. ¶ 1.) Mr. Torrence explains that Sears introduced the Arbitration Agreement to employees through Sears' "My Personal Information" ("MPI") online portal during the week of April 2, 2012. (*Id.* ¶¶ 7–9.) Sears employees log into the MPI portal using a unique ID and password. (*Id.* ¶ 10.) Once logged in, employees are required to complete certain policy acknowledgements on a page entitled "SHC Policy Acknowledgements." (*Id.* ¶ 12.) Beginning the week of April 2, 2012, the arbitration agreement was among the policies employees were required to acknowledge on the SHC Policy Acknowledgements page. (*Id.* ¶¶ 7–13.) Upon clicking the link for the "Arbitration Policy/ Agreement" the user is brought to a page containing links to the full text of the agreement, the opt-out form, and the acknowledgement page. (*Id.* ¶ 13.) When clicking on the acknowledgement link on that page, an employee receives the following message:

> **By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement. I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement Opt Out form located at the end of the Agreement.**

(*Id.* ¶ 15.) By clicking "Yes" and then "Submit," employees submit their acknowledgement of the policy. (¶ 16.) This submission is then recorded by Sears' Human Resources Management System, known as "PeopleSoft." (*Id.* ¶ 17.) PeopleSoft maintains the company's various personal records. (*Id.* ¶¶ 5–6.) The PeopleSoft records for Plaintiff indicate that he acknowledged the Arbitration Agreement on April 11, 2012 (¶ 24.) Further, the PeopleSoft records do not indicate that Plaintiff submitted a form to Opt Out of the agreement.

As the Magistrate Judge correctly explained, Texas law requires an employer seeking to enforce an arbitration agreement to establish (1) that it provided unequivocal notice to the employee of the arbitration agreement or policy; and (2) that the employee validly accepted its terms. *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006).

Plaintiff makes two argument regarding why this court should not find the Arbitration Agreement valid. First, Plaintiff argues that the Declaration of Mr. Torrence and the attached evidence are insufficient for Defendant to meet its initial burden to show that he validly accepted the Arbitration Agreement. (Pl.s' Resp. at 3–5, Dkt 8; Pl.'s Resp. at 2–3, Dkt. 12.) He suggests that "some sort of forensic analysis" or expert opinion is necessary to demonstrate the "the technical workings of the software program Sears claims it used to secure Duge's agreement." (Pl.s' Resp. at 3–5, Dkt 8; Pl.'s Resp. at 2–3, Dkt. 12.) In support of this argument, Plaintiff fails to cite any case addressing where evidence of an arbitration agreement similar to what Defendant submitted was left unrebutted, then deemed insufficient by a court. In the two cases Plaintiff cites, evidence was submitted rebutting the evidence of an arbitration agreement, creating a fact issue as to whether a valid agreement existed. *See Goad v. St. David's Healthcare P'ship*, L.P., LLP, No. 1-16-CV-044 RP, 2016 WL 2853573, at *2 (W.D. Tex. May 13, 2016) (declaration of plaintiff stated arbitration policy not discussed at meeting); *Ruiz v. Moss Bros. Auto Grp.*, 181 Cal. Rptr. 3d 781, 785 (2014) ("In his opposing declaration, [plaintiff] averred he did not recall signing any arbitration agreement."). Further, as Defendant notes, other courts have found evidence similar to what Defendant was submitted here, sufficient for Defendant to meet its initial burden of demonstrating that an arbitration agreement exists. *See, e.g.*, *Ricci v. Sears Holding Corp.*, No. CIV. 14-3136, 2015 WL 333312, at *5 (D.N.J. Jan. 23, 2015). The Court finds that Defendant's evidence here is sufficient to meet its initial burden of demonstrating that an arbitration agreement exists.

Second, Plaintiff argues that he did not submit his acceptance of the Arbitration Agreement. Plaintiff's declaration states:

> To the best of my knowledge I never saw this policy when I was a Sears employee, and I never clicked on or signed anything to indicate that I knew or agreed to this policy. Because Sears management knew my password and login information, and sometimes used the computer as me even after I had logged in, someone other than me probably performed whatever steps Sears is claiming that I performed to

>generate the computer data they are now relying on as proof of my agreement to arbitrate.

(Duge Decl. ¶ 6.)

Defendant argues that "[s]everal courts have enforced this identical arbitration agreement and found the plaintiff assented to the agreement, even when s/he denied having any recollection of participating in the online portal or otherwise having knowledge of the Arbitration Agreement." (Def.'s Objs. at 6, Dkt. 11.) In both cases cited by Defendant, however, the plaintiff asserted that they did not recall signing the agreement or did not understand the rights being forfeited. The plaintiffs did not argue, as Plaintiff essentially does here, that Defendant committed fraud by electronically accepting the agreement on behalf of the plaintiff and without his or her knowledge. *Ricci*, No. CIV. 14-3136, 2015 WL 333312, at *5 (D.N.J. Jan. 23, 2015) ("Plaintiff has not claimed that any fraud took place."); *Uddin v. Sears, Roebuck & Co.*, No. CIV.A. 13-6504, 2014 WL 1310292, at *5 (D.N.J. Mar. 31, 2014) ("Plaintiff is not claiming fraud."). Further, in one of the cases, the plaintiff failed to submit a declaration or affidavit in support of his contention that he had not accepted the agreement. *Ricci*, No. CIV. 14-3136, 2015 WL 333312 at *5 ("Beyond the self-serving arguments in his brief, Plaintiff has not presented this Court with any admissible evidence sufficient to create a genuine dispute of fact."). Here, Plaintiff has supplied the Court with evidence to support his contentions. The Court agrees with the Magistrate Judge that the evidence submitted by Plaintiff is sufficient to create a fact issue as to whether Plaintiff accepted the terms of the Arbitration Agreement.

### 2. Acknowledgment of Arbitration Agreement in Plaintiff's First Lawsuit

Defendant argues that Plaintiff failed to demonstrate that an issue of fact existed with respect to whether he had agreed in his prior lawsuit that his employment claims were subject to arbitration. Specifically, Defendant asserts that Plaintiff's attorney's active participation in the drafting of Defendant's unopposed motion to compel, filed in Plaintiff's previous lawsuit against

Defendant, "establishes that Plaintiff did indeed agree in the prior proceeding that his employment-related claims against Sears are subject to the Arbitration Agreement." (Def.'s Obj. at 7, Dkt. 11.) Defendant seems to suggest that Plaintiff should somehow be precluded from arguing that he did not agree to arbitrate his claims because, in a prior case, his attorney edited an unopposed motion of Defendant's stating that "Plaintiff acknowledges the application of the [arbitration agreement] to the claims." (Def.'s Objs. at 8, Dkt. 11.) Defendant does not provide a legal basis for this argument.

First, the Court notes that theories of estoppel that might preclude a party from later arguing that they did not agree to arbitration do not appear to apply in this case. *See, e.g., Rachal v. Reitz*, 403 S.W.3d 840, 846 (Tex. 2013) (discussing how "a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him").

Second, the Court reiterates that the relevant question here is whether Plaintiff agreed to arbitrate his claims against Defendant. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Defendant asserts Plaintiff did so in April 2012. Plaintiff's attorney's edits to an unopposed motion, filed approximately three years later by Defendant, are at best some evidence in favor of Defendant's argument. Facts put forward by Plaintiff, including that Plaintiff denied that there was an arbitration agreement between the parties in the prior lawsuit and agreed to not oppose an order requiring arbitration only if Sears would agree to mediate the case first (Uloth Decl. ¶¶ 3, 5), weigh in favor of Plaintiff. Weighing this competing evidence, however, is to be left for trial. *See* 9 U.S.C. § 4.

## B. Scope of Arbitration Agreement

Plaintiff maintains that Defendant's motion to dismiss and compel arbitration should be denied, regardless of whether Plaintiff signed the agreement, because Plaintiff's claims do not fall

11

within the scope of the arbitration agreement. The report and recommendation of the Magistrate Judge concluded that the Arbitration Agreement expressly covers all employment-related disputes or claims, including those brought post-employment. (Report & Recommendation at 6, Dkt. 10.) Further, it concluded that Plaintiff's claims were in fact based on his past work experience with Defendant. (*Id.* at 7.)

"Because arbitration is necessarily a matter of contract, courts may require a party to submit a dispute to arbitration only if the party has expressly agreed to do so." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002). As the Court previously acknowledged, however, any doubts regarding whether a particular claim falls within the scope of an arbitration agreement must be resolved in favor of arbitration. *Jones v. Halliburton Co.*, 583 F.3d 228, 242 (5th Cir. 2009) ("This court has held that when the scope of an arbitration clause 'is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration.'").

The key language in the Arbitration Agreement here is within the provision that explains "How This Agreement Applies." (Torrence Dep. Ex. A at 1, Dkt. 7–2.) It states that, "[e]xcept as it otherwise provides, this Agreement applies, without limitation, to disputes regarding the employment relationship." (*Id.*) Thus, the issue before the Court is whether claims that did not arise until nearly a year and a half *after* Plaintiff's employment with Sears ended are nevertheless regarding his previous "employment relationship" with Sears.

Plaintiff's complaint identifies two causes of action—a claim for retaliation and a claim for age discrimination. (Compl. at 3, Dkt. 1 ("Causes of Action for Age Discrimination and Retaliation").) While Plaintiff's retaliation claim undoubtedly regards Plaintiff's past employment relationship with Sears because he would have no claim for retaliation without that relationship, it is less apparent that the same can be said of Plaintiff's claims of age discrimination . The Court ultimately concludes, however, that both causes of action are subject to the Arbitration Agreement.

12

Many of the facts alleged in Plaintiff's complaint that are relevant to his age discrimination claim relate to this prior employment at Sears. Plaintiff worked for Sears for more than twenty years, then argued that "he was better qualified than the much younger applicants who were hired for the positions." While Plaintiff argues that the Magistrate Judge "improperly assumed it was relevant that Duge's superior job qualifications arose from his employment at Sears as opposed to some other employer" (Pl.'s Resp. to Def.'s Obj. at 9), it was not the Magistrate Judge's assumption, but the language of the arbitration agreement, that made it relevant that these facts are the basis for his claims. Again, the Arbitration Agreement specifies that it "applies, without limitation, to disputes regarding the employment relationship." Plaintiff's age discrimination claim regards his past employment relationship with Sears because it is premised on Plaintiff's argument that his past employment relationship with Sears made him more qualified than other applicants. In light of the fact that Plaintiff's age discrimination claim is premised on facts regarding his employment relationship with Defendant, and in light of the strong federal policy in favor of arbitration, the Court agrees with the conclusion of the Magistrate Judge that Plaintiff's current claims of discrimination also fall within the scope of the Arbitration Agreement.

## IV. ATTORNEY'S FEES

In its motion to compel arbitration, Defendant also requested attorney's fees and costs for preparing and filing the motion. (Mot. to Dismiss at 12; Dkt. 7.) The Magistrate Judge recommended denying that request. (Report & Recommendation at 10–11, Dkt. 10.) Defendant did not object to this recommendation. (See generally Def.'s Objs., Dkt. 11.) Finding no clear error in the recommendation of the Magistrate Judge, *see Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), the Court adopts the recommendation to deny Defendant's request for attorney's fees.

13

## V. CONCLUSION

The parties dispute whether or not Plaintiff accepted Defendant's Arbitration Agreement, resulting in a genuine fact issue regarding the validity of the Agreement. Accordingly, Defendant's Motion to Dismiss and to Compel Arbitration (Dkt. 7) is hereby **DENIED**.

As noted above, the FAA governs this matter. In pertinent part, the FAA provides "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The FAA further provides that the parties have a right to a trial by jury of the issue. *Id.*; *see also Prescott v. Northlake Christian Sch.*, 141 F. App'x. 263, 268–69 (5th Cir. 2005) (FAA allows for jury trial to resolve fact issues surrounding "the making of an arbitration agreement" and applies in proceedings to compel arbitration).

Accordingly, the Court hereby sets and directs the parties, or counsel acting on their behalf, to participate in a telephone status conference on October 5, 2016 at 9:45 AM. Counsel for Plaintiff shall be responsible for coordinating the call and providing dial-in information at least 24 hours prior to the hearing to the Courtroom Deputy at julie_golden@txwd.uscourts.gov. If either party would prefer for the conference to be held in person, counsel should contact the Courtroom Deputy as soon as possible in order to set a new date. The parties should be prepared to discuss the appropriate schedule and means for resolving the issue of arbitration at the conference.

**SIGNED** on September 26, 2016.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE